En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| El Pueblo de Puerto Rico en interés del menor G.R.S. | Certiorari 99 TSPR 115 |

Número del Caso: CE-1994-0806 Y 807 CONSOLIDADOS

Abogado de la Parte Peticionaria:  Lcdo. Rafael E. Rodríguez Rivera

Abogados de la Parte Recurrida:    Hon. Carlos Lugo Fiol,
                                   Procurador General
                                   Lcda. Rose Mary Corchado Lorent
                                   Procuradora General Auxiliar

Tribunal de Primera Instancia, Sala Superior de Bayamón Asuntos de Menores

Juez del Tribunal de Primera Instancia: Hon. Evelyn Hernández

Fecha: 7/6/1999

Materia: Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico en
Interés del Menor G.R.S.

|  |  |  |
|---|---|---|
| | CE-94-806 | Certiorari |
| | CE-94-807 | |
| | Cons. | |

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 6 de julio de 1999

El 30 de septiembre de 1994 se presentaron contra el menor G.R.S. tres quejas en donde se le imputó haber cometido las faltas equivalentes a los delitos de robo[1], posesión de un arma de fuego sin tener una licencia[2] y portación de armas cargadas, o sus municiones, sin licencia para ello[3] durante hechos ocurridos el 5 de agosto de 1994.

La vista para la determinación de causa probable para radicar una querella fue señalada para el viernes 14 de octubre de 1994. El lunes

---

[1]  Artículo 173 del Código Penal, 33 L.P.R.A. sec. 4279.
[2]  Artículo 6 de la Ley de Armas, 25 L.P.R.A. sec. 416.
[3]  Artículo 8 de la Ley de Armas, 25 L.P.R.A. sec. 418.

10 de octubre, la representación legal del menor imputado presentó una moción para notificar que iba a interponer la defensa de coartada durante la referida vista. En la moción explicó en qué consistía la defensa e incluyó una lista de los testigos con los cuales se proponía establecerla.

El día de la vista para la determinación de causa probable para radicar una querella, el Procurador de Menores indicó a la Juez del antiguo Tribunal de Distrito, Hon. Carmen Rivera de Saldaña, que no se encontraba preparado por no contar con la presencia de un testigo de cargo. Debido a la ausencia de un testigo indispensable del Procurador, el tribunal pospuso la referida vista para el 26 de octubre siguiente.

Antes de retirarse, la representación legal del menor G.R.S. inquirió al tribunal sobre la moción anunciando la defensa de coartada. La referida Juez le informó que dicha moción había sido denegada bajo el fundamento de que tal defensa no podía presentarse durante esa etapa de los procedimientos, o sea, durante la vista para determinar causa probable para radicar una querella.[4] La representación legal del menor argumentó

_____

[4] La moción anunciando la defensa de coartada fue declarada no ha lugar el 11 de octubre de 1994 y notificada a las partes el 13 de octubre próximo. En la notificación, el tribunal fundamenta su decisión en las Reglas 6.2 y 6.5 de las Reglas de Procedimiento para

que, de acuerdo con las Reglas de Procedimientos para Asuntos de Menores[5] y con la jurisprudencia de este Tribunal, el menor imputado tenía derecho a presentar prueba a su favor, incluyendo la defensa de coartada, en la etapa de los procedimientos en que estaba el caso de autos.

Reafirmándose en su determinación denegando la moción, la Juez Rivera de Saldaña hizo unas expresiones que, a juicio de la defensa, implicaban que ella tenía una opinión formada, en cuanto al resultado del caso, y que denotaban prejuicio en contra del menor G.R.S.. Por tal razón, la representación legal del menor radicó una solicitud de inhibición ante el Tribunal Superior el 25 de octubre de 1994. Asimismo, y en igual fecha, presentó una petición de certiorari y una moción en auxilio de su jurisdicción ante el referido foro solicitándole que revisara la determinación del Tribunal de Distrito denegando la moción anunciando la defensa de coartada.

El Tribunal Superior señaló una vista para el 3 de noviembre de 1994 con el propósito de dilucidar la moción de inhibición y la solicitud de certiorari. Luego de evaluado los escritos y escuchado los argumentos de las partes, el Tribunal Superior resolvió confirmar al Tribunal de Distrito en ambos extremos.

---

Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R. 6.2 y 6.5, discutidas más adelante.

[5] Ley Núm. 33 de 19 de junio de 1987, 34 L.P.R.A. Ap. I-A, R. 1.2 et seq.

Inconforme con todo lo anterior, el 9 de noviembre de 1994, el abogado del menor G.R.S. radicó ante este Tribunal dos recursos de certiorari. En el primer recurso, caso número CE-94-806, nos solicita que revisemos la determinación del Tribunal Superior mediante la cual se negó a revisar la orden del Tribunal de Distrito denegando la moción anunciando la defensa de coartada. Por otra parte, en el segundo recurso, caso número CE-94-807, debemos revisar si debía prosperar la moción de inhibición presentada en el caso de epígrafe.[6]

Mediante resoluciones del 9 y 10 de noviembre de 1994, ordenamos la consolidación de ambos recursos y la paralización de los procedimientos a nivel de instancia. Así también, concedimos un término al Procurador General para que mostrara causa por la cual este Tribunal no debía expedir el auto de certiorari solicitado y dictar Sentencia revocatoria de las resoluciones recurridas. En cumplimiento de tal orden, el Procurador General radicó su escrito el 13 de febrero de 1995.

---

[6] Antes de proseguir es menester señalar, con respecto al caso número CE-94-807, esto es, en el recurso que se solicita la inhibición de la juez, que el 31 de agosto de 1998, la representación legal del menor G.R.S. radicó una moción informando a este Tribunal que la Juez Rivera de Saldaña no ejercía sus funciones como juez en el Tribunal de Primera Instancia, Sala de Asuntos de Menores y que, por ende, el caso de epígrafe no estaba ya ante su consideración. Según el menor peticionario, este hecho convirtió en académica la solicitud de inhibición; razón por la cual nos solicitó que lo diéramos por desistido en cuanto al caso número CE-94-807.

Contando con la comparecencia de ambas partes y estando en posición de resolver, procedemos a resolver el recurso número CE-94-806.

I

La Ley de Menores de Puerto Rico[7], según enmendada, establece que, como regla general, el Tribunal de Primera Instancia, Sala de Asuntos de Menores, tendrá jurisdicción para entender en todo caso en que se impute a un menor que todavía no ha cumplido los dieciocho (18) años haber incurrido en el tipo de conducta que constituiría delito de ser cometida por un adulto, según se define en el Código Penal y otras leyes especiales.[8]

En el pasado, en ocasión de estudiar la antigua Ley de Menores[9], este Tribunal pautó la norma de separación entre los procedimientos relativos a menores y los procesos criminales creados para los adultos, señalando que los procedimientos estatuidos en dicha Ley no se consideraban de naturaleza criminal, sino como procedimientos civiles "sui generis". E.L.A. en Interés R.M.R., 83 D.P.R. 242, 247 (1961); Pueblo v. Montalvo Acevedo, 83 D.P.R. 727, 731-732 (1961); Pueblo v. Tribunal Superior, 100 D.P.R. 80, 83-84 (1971); R.A.M. v. Tribunal Superior, 102 D.P.R. 270, 273 (1974); Pueblo ex rel. L.V.C., 110 D.P.R. 114, 124 (1980); Pueblo ex rel.

---

[7] Ley Núm. 88 de 9 de julio de 1986, 34 L.P.R.A. 2201 et seq.; en adelante denominada como "Ley de Menores".

[8] Artículo 2 de la Ley de Menores, 34 L.P.R.A. sec. 2204. Para las excepciones a esta norma general, véase dicho articulado.

J.L.D.R., 114 D.P.R. 497, 502 (1983). Ahora bien, en E.L.A. en interés R.M.R., ante, explicamos que, no empece el hecho de que los procesos judiciales para menores no constituyeran propiamente causas criminales, el menor al que se le imputara conducta constitutiva de delito podía reclamar aquellas garantías constitucionales que le aseguraran un trato justo y un debido procedimiento de ley.

Es menester señalar que, al aplicar la Ley de Menores de 1986, este Tribunal ha reiterado estos principios fundamentales que caracterizan al Sistema de Justicia Juvenil puertorriqueño. Véase: Pueblo en interés menor R.G.G., 123 D.P.R. 443, 456 (1989); Pueblo en interés menor R.H.M., 126 D.P.R. 404, 425 (1990); Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990 (1993); Pueblo en interés del menor F.R.F., res. el 22 de abril de 1993, ___ D.P.R. ___ (1993); Pueblo en interés del menor N.R.O., res. el 12 de septiembre de 1994, __ D.P.R. ___ (1994); Pueblo v. Ríos Dávila, res. el 30 de junio de 1997, __ D.P.R. __ (1997).

La nueva Ley de Menores adoptó como marco filosófico del Sistema de Justicia Juvenil, contrario a la orientación paternalista y tutelar que guiaba a la antigua Ley, un enfoque ecléctico de acción e intervención en el cual se armoniza la responsabilidad de "parens patriae" del Estado, en cuanto a la

---

[9] Ley Núm. 97 de 23 de junio de 1955, 34 L.P.R.A. secs.

rehabilitación de los ofensores, con el deber de éstos de responder por sus actos. Exposición de Motivos de la Ley Núm. 88, Leyes de Puerto Rico, 1986, pág. 286; 34 L.P.R.A. 2202; véase, además: Pueblo en interés menor R.G.G., ante, a la pág. 443; Pueblo en interés del menor R.H.M., ante, a la pág. 409; Pueblo en interés de los menores A.L.R.G. y F.R.G., ante; Pueblo en interés del menor A.A.O., res. el 4 de abril de 1995, ___ D.P.R. ___ (1995); Pueblo v. Ríos Dávila, ante. Tal orientación conciliadora refleja la marcada inclinación hacia una merma en las diferencias entre los procesos judiciales de adultos y menores; esto es así ya que, "si bien el procedimiento continúa siendo 'sui generis', éste ha adquirido matices de naturaleza punitiva que van más allá del propósito meramente rehabilitador y paternalista de la antigua Ley". Pueblo en interés menores A.L.R.G. y F.R.G., ante; Pueblo en interés del menor R.G.G., ante, a la pág. 460.

Como hemos señalado anteriormente, la ya derogada Ley de Menores de 1955 ofrecía a éstos escasas garantías constitucionales debido a que, por tratarse de un procedimiento instado en el interés del menor, no se requería la protección de tales garantías. Pueblo en interés menor R.G.G., ante, a las págs. 458-459.[10] Por el contrario, y en consonancia con el enfoque punitivo de la

---

2001-2015.

nueva Ley de Menores, nuestra jurisprudencia ha ido extendiendo a los menores ciertas salvaguardas que protegen a los adultos en el proceso criminal. Así, por ejemplo, en Pueblo en interés del menor R.G.G., ante, reconocimos a los menores el derecho a un juicio rápido. En Pueblo en interés del menor R.H.M., ante, reiteramos la norma que establece que a los menores les protege, en todo momento, la garantía constitucional contra la autoincriminación. Así también en Pueblo en interés del menor R.H.M., ante, sostuvimos el derecho de un menor a rebatir la prueba del Estado. Por otra parte, en Pueblo en interés menores A.L.R.G. y F.R.G., ante, este Tribunal resolvió que un menor a quien se le imputa y procesa por una falta, tiene un derecho constitucional a examinar el expediente social en que se apoya el juez para imponer una medida dispositiva. El acceso al expediente es corolario del derecho del menor a tener una adecuada representación legal.

Asimismo, resolvimos en Pueblo en interés menores A.L.R.G. y F.R.G., ante, que los menores gozan del derecho a confrontarse con los testigos de cargo en los procesos en su contra y, por lo tanto, tienen derecho a obtener copia de las declaraciones juradas de los testigos que hayan declarado en la vista de determinación de causa probable para radicar la querella. Un último

---

[10] Véase, en general, H. Quiñones Echevarría, La reforma del sistema de justicia juvenil en Puerto Rico: Ley Núm. 88 de 9 de julio de 1986, 48 Rev. C. Abo. P.R. 79 (1987).

ejemplo lo encontramos en <u>Pueblo en interés del menor N.R.O.</u>, <u>ante</u>, donde decidimos aplicar a los procedimientos de menores la regla de exclusión de evidencia ilegalmente obtenida consagrada en la Sección 10 del Artículo II de nuestra Constitución.

El actual carácter adversativo de los procesos judiciales juveniles, unido al incremento en el reconocimiento de más derechos constitucionales aplicables a los menores, exigen un grado mayor de formalidad en tales procesos; sin alterar, claro está, la naturaleza especial de los mismos. <u>Pueblo en interés menor R.G.G.</u>, <u>ante</u>, a la pág. 459.[11] Debido a esto, y a que los menores imputados están sujetos, como los adultos, a la posible reclusión en una institución disciplinaria y, por ende, a la privación de su libertad, es que nuestro ordenamiento jurídico juvenil está predicado, no sólo en el principio de rehabilitación, sino también en el reconocimiento de que nadie será privado de su libertad y propiedad sin el debido proceso de ley. <u>R.A.M.</u> v. <u>Tribunal Superior</u>, <u>ante</u>, a la pág. 273. Con esto en mente, la Asamblea Legislativa dispuso que la interpretación de la Ley de Menores de 1986 debe efectuarse de conformidad con los propósitos que inspiran dicha Ley, a saber:

> "(a) proveer para el cuidado, protección, desarrollo, habilitación y rehabilitación de los menores y proteger el bienestar de la comunidad;

---

[11] Véase, además, Quiñones Echevarría, <u>Op. cit.</u>, pág. 84.

(b) proteger el interés público tratando a los menores como personas necesitadas de supervisión, cuidado y tratamiento, a la vez que se les exige responsabilidad por sus actos;

(c) <u>garantizar a todo menor un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales</u>." (Enfasis suplido) Artículo 2 de la Ley de Menores, 34 L.P.R.A. sec. 2202.

Como es sabido los procedimientos judiciales relativos a los menores de edad se rigen, además de por las disposiciones de la Ley de Menores, por las Reglas de Procedimiento para Asuntos de Menores[12], adoptadas por este Tribunal de conformidad con la autoridad que concedió dicha Ley[13].[14] La Regla 1.2 de tales Reglas[15] prevé que éstas sean interpretadas de acuerdo con los objetivos que persigue la Ley de Menores y de forma

---

[12] Ley Núm. 33 de 19 de junio de 1987, 34 L.P.R.A. Ap. I-A, R. 1.2 <u>et seq</u>.

[13] A esos efectos, el Artículo 38 de la Ley de Menores, 34 L.P.R.A. sec. 2238, dispone que:

"El Tribunal Supremo adoptará las reglas que gobernarán los procedimientos en todos los asuntos cubiertos por las disposiciones de [esta Ley]. <u>Dichas reglas no menoscabarán o modificarán derechos sustantivos</u> y regirán un vez se dé cumplimiento a los trámites fijados por la sec. 6, art. V de la Constitución del Estado Libre Asociado de Puerto Rico,... ." (Enfasis suplido.)

[14] La Regla 1.2 de las de Procedimientos para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R. 1.2, preceptúa que tales Reglas "... regirán todos los procedimientos que se inicien a partir de la vigencia de la [Ley de Menores de 1986] incluyendo aquellas que estén pendientes a la fecha de vigencia de estas reglas siempre que su aplicación no perjudique derechos sustantivos...".

[15] Ibid.

que se garantice una solución justa, rápida y económica de todos los asuntos.

De conformidad con lo que antecede, este Tribunal ha resuelto que "...la clara intención que tuvo el legislador cuando se aprobaron las Reglas de Procedimiento para Asuntos de Menores [fue] extender a éstos los derechos y salvaguardas procesales fundamentales que se les han reconocido a los adultos o que los adultos disfrutan por mandato constitucional". (Enfasis en el original) Pueblo en interés del menor J.A.S., ante. Por tal razón, hemos sostenido que "...de una lectura de la totalidad de las Reglas de Procedimiento para Asuntos de Menores se desprende que dichas reglas siguen fundamentalmente las disposiciones de las Reglas de Procedimiento Criminal que regulan, en esta jurisdicción, los procedimientos criminales contra los adultos". (Enfasis suplido). Pueblo en interés menor R.G.G., ante, a la pág. 459.

II
Examinadas las características principales de nuestro Sistema de Justicia Juvenil y el marco de aplicación de la Ley de Menores y de su Reglamento, pasamos a evaluar propiamente el primer error aducido por el peticionario.

La representación legal del menor G.R.S. sostiene que, al igual que en la vista preliminar que forma parte de los procedimientos de adultos, en la vista para la

determinación de causa probable para radicar una querella dentro de los procesos de menores se debe permitir que un menor, como parte de su derecho a un debido proceso de ley, presente evidencia sobre la defensa de coartada. Por su parte, el Procurador General alega que la moción anunciando la defensa de coartada sólo puede presentarse diez (10) días antes de la vista adjudicativa y que su procedencia debe ser dilucidada en dicha vista. No tiene razón el Procurador General. De prevalecer la posición del Procurador General se estaría despojando a los menores de su libertad sin el debido procedimiento de ley. Veamos.

En el contexto de los procedimientos de menores, la vista para la determinación de causa probable para la presentación de una querella es regulada por las disposiciones de la Regla 2.10 de las Reglas de Procedimiento para Asuntos de Menores[16], la cual dispone

_____

[16] La Regla 2.10 de las Reglas de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R. 2.10, lee como sigue:

"(a) El propósito de esta vista en su primera etapa es el de constatar si existe rastro de prueba necesario sobre los elementos esenciales de la falta y su conexión con el menor imputado.

(b) El juez ante quien se celebre la vista de determinación de causa probable informará al menor del contenido de la queja, le advertirá sobre su derecho a no incriminarse, a permanecer en silencio con relación a los hechos imputados, a comunicarse con un abogado y le orientará sobre los derechos constitucionales que le cobijan. En dicha vista, el menor tendrá derecho a estar

que la función básica de esta vista preadjudicativa es verificar si el Estado cuenta con "un rastro de prueba necesario" para establecer todos los elementos sustanciales de la falta y para vincular al menor imputado con tal evidencia.

Debido a la especial importancia que tiene la vista de determinación de causa probable para presentar una querella en los casos de menores, el juez que la presida tiene la obligación de informar al menor del contenido de la queja así como el deber de advertirle sobre su derecho a no incriminarse, a permanecer en silencio con relación a los hechos imputados y a comunicarse con un abogado. Además, el magistrado tiene que orientarle sobre todos los derechos constitucionales que le cobijan.[17] Pueblo en interés del menor J.A.S., ante. La referida Regla expresamente consagra que en dicha vista el menor tendrá derecho a estar representado por abogado, a

representado por abogado, a contrainterrogar testigos y presentar prueba a su favor.

(c) Procedimiento durante la vista – El Procurador presentará la prueba para la determinación de causa probable y podrá contrainterrogar a los testigos que presente el menor. Para la determinación de causa probable, el juez se limitará al examen del contenido de la queja presentada ante él y considerará únicamente la evidencia sometida con relación a la misma.

Al ser requerido para ello, el Procurador pondrá a disposición del menor para su inspección las declaraciones juradas de los testigos, que hayan declarado en la vista, que tuviere en su poder."

[17] Ibid.

<u>contrainterrogar testigos y a presentar prueba a su favor</u>.[18]

Por otra parte, la Regla 6.2 de las de Procedimiento para Asuntos de Menores[19], dispone que, entre la mociones que deberán presentarse y resolverse antes de la vista adjudicativa, se encuentra la moción para interponer la defensa de coartada. La Regla 6.5[20] abunda un poco más en cuanto al procedimiento para presentar la referida defensa y expresamente señala que "cuando el menor se proponga establecer la defensa... de coartada, deberá notificar al Procurador, <u>por lo menos</u> diez (10) días antes de la vista adjudicativa". (Enfasis suplido).

De una lectura conjunta de estas dos Reglas, se desprende que su texto es claro en cuanto a dos aspectos: el primero, que la moción notificando la defensa de coartada debe presentarse y resolverse <u>antes</u> de la vista adjudicativa; y el segundo, que la defensa tiene <u>hasta diez (10) días antes de la vista adjudicativa</u> para cumplir con su deber de notificar al Procurador de Menores su intención de interponer la referida defensa. De lo anterior <u>no</u> se colige que el menor únicamente puede presentar la moción dentro de los diez (10) días antes de la vista adjudicativa, postura que el Procurador desea que hoy acojamos. Muy por el contrario, por imperativo de las propias Reglas 6.2 y 6.5 del Reglamento, la moción

---

[18] Ibid.
[19] 34 L.P.R.A. Ap. I-A, R. 6.2.
[20] 34 L.P.R.A. Ap. I-A R. 6.5.

anunciando la defensa de coartada <u>debe radicarse y dilucidarse</u> antes de la vista adjudicativa.

Nuestra posición sobre este aspecto encuentra apoyo en ciertas expresiones de la Profesora María Laura Colón —miembro del Comité de Justicia Juvenil que redactó el proyecto de reglas para regir los procedimientos de menores bajo la Ley de Menores de 1986— que por su tangencia con el caso de autos reproducimos a continuación:

> "Las disposiciones que regían los procedimientos judiciales en relación con los menores al amparo de la Ley Núm. 97, derogada, adolecían de una serie de defectos en la reglamentación de asuntos como la interposición de defensas... . Respondiendo a la necesidad de establecer un orden procesal que propicie certeza y uniformidad en la adjudicación de los casos, el Comité de Justicia Juvenil recomendó, y el Tribunal Supremo adoptó en este Capítulo, unas medidas dirigidas a que <u>toda materia de ser susceptible de ser determinada antes de la vista adjudicativa sea considerada por el tribunal antes de su celebración. Para ello, se pone en ejecución el mecanismo de interposición de mociones que serán consideradas antes de la vista adjudicativa</u>. En el diseño de este esquema se utilizó como guía las Reglas de Procedimiento Criminal." (Enfasis suplido).[21]

III
Este Tribunal ha resuelto que la vista de determinación de causa probable estatuida en la Regla 2.10 de las Reglas de Procedimiento para Asuntos de Menores[22] <u>corresponde</u> a la vista preliminar para determinación de causa probable para radicar una

---

[21] M.L. Colón, <u>Comentarios a las Reglas de Procedimiento para Asuntos de Menores</u>, 3 Forum 23 (1987).
[22] 34 L.P.R.A. Ap. I-A, R. 2.10.

acusación en los casos de adultos codificada en la Regla 23 de las Reglas de Procedimiento Criminal[23]. Pueblo en interés menores A.L.R.G. y F.R.G., ante; Pueblo en interés del menor F.R.F., ante.

Bajo las disposiciones de esta última regla, hemos sostenido que "...el derecho a [la] vista preliminar es de rango estatutario y no constitucional". Pueblo v. Andaluz Méndez, res. el 30 de junio de 1997, ___ D.P.R. ___ (1997); Pueblo v. Rivera Rivera, 122 D.P.R. 862, 872 (1988); Pueblo v. Martínez Torres, 116 D.P.R. 793, 801 (1986); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 660 (1985). Su propósito fundamental es "...evitar que se someta a un ciudadano arbitraria e injustificadamente a los rigores de un proceso criminal". Pueblo v. Andaluz Méndez, ante; Pueblo v. Rodríguez Ríos, res. el 1 de agosto de 1994, __ D.P.R. ____ (1994); Pueblo v. Vallone, res. el 24 de mayo de 1993, __ D.P.R. ___ (1993); Pueblo v. Padilla Flores, 127 D.P.R. 698, 702 (1991); Pueblo v. Rivera Alicea, 125 D.P.R. 37, 41 (1989); Pueblo v. Rodríguez Aponte, ante, a la pág. 663; Pueblo v. Vélez Pumarejo, 113 D.P.R. 349, 355 (1982); Hernández Ortega v. Tribunal Superior, 102 D.P.R. 765, 768 (1974); Pueblo v. Figueroa Castro, 102 D.P.R. 274, 284 (1974); Pueblo v. López Camacho, 98 D.P.R. 700, 702 (1970).

La jurisprudencia de este Tribunal ha establecido que la vista preliminar, consagrada en las Reglas de

---

[23]   34 L.P.R.A. Ap. II, R. 23.

Procedimiento Criminal puertorriqueñas, sigue un enfoque procesal ecléctico donde se combina el modelo de visión retrospectiva, orientado mayormente en la legalidad del arresto y la validez de la detención, y el modelo prospectivo, enfocado principalmente en el juicio. No obstante, nuestras decisiones demuestran una inclinación hacia el modelo de visión prospectiva por estar conscientes del peligro y la injusticia que conlleva el someter a una persona innecesariamente a un juicio. Véase: Pueblo v. Rivera Rivera, ante, a las págs. 873-874; Pueblo v. Rodríguez Aponte, ante, a la pág. 667.

De acuerdo con la legislación que gobierna la vista preliminar, el magistrado ante el cual se celebre debe limitarse a determinar si existe o no causa probable para creer que se ha cometido un delito y que el mismo ha sido cometido por el acusado. Del Toro v. E.L.A., res. el 12 de septiembre de 1994, __ D.P.R. ___ (1994); Pueblo v. Rivera Alicea, ante, a la pág. 41; Pueblo v. Rodríguez Aponte, ante, a la pág. 663; Vázquez Rosado v. Tribunal Superior, 100 D.P.R. 592, 594 (1972); Pueblo v. López Camacho, ante, a la pág. 702. Hemos expresado que su función no es establecer la culpabilidad o inocencia del acusado, puesto que no se trata de una adjudicación final del caso, sino auscultar la probabilidad de que se haya cometido un delito y de que el imputado fue el autor del mismo. Mediante la vista preliminar se persigue indagar si, en efecto, el Estado tiene adecuada justificación

para proseguir un proceso judicial en contra de un imputado de delito grave, tomando en consideración las onerosas consecuencias que ello implica para éste y para el Estado[24]. Pueblo v. Andaluz Méndez, ante; Del Toro v. E.L.A., ante; Pueblo v. Rivera Alicea, ante, a la pág. 41; Pueblo v. Rodríguez Aponte, ante, a las págs. 660, 663-664; Pueblo v. Figueroa Castro, ante, a la pág. 284.[25]

En el despliegue de su responsabilidad, el Ministerio Público debe producir evidencia sobre todos los elementos del delito imputado y de que existe la probabilidad de que el imputado sea el responsable de la comisión de tal delito. Esta prueba no tiene que evidenciar más allá de duda razonable la culpabilidad del acusado; Pueblo v. Rivera Alicea, ante, a las págs. 41-42; Pueblo v. Rodríguez Aponte, ante, a las págs. 663-664; Pueblo v. Vélez Pumarejo, ante, a la pág. 355; Pueblo v. Figueroa Castro, ante, a la pág. 284; Vázquez Rosado v. Tribunal Superior, ante, a la pág. 594; simplemente tiene que establecer un caso "prima facie" en su contra. Del Toro v. E.L.A., ante; Pueblo v. Rodríguez

---

[24] Con respecto a las gravosas repercusiones, sobre el Estado, de enjuiciar innecesariamente a una persona criminalmente, este Tribunal expresó en Pueblo v. Rodríguez Aponte, ante, a la pág. 665 que la vista preliminar "... es un mecanismo que sirve el propósito de impedir que acusaciones frívolas e insustanciales recarguen la labor del sistema de justicia, consumiendo el tiempo de los jueces, fiscales, jurados y demás funcionarios que han de intervenir en el juicio. [Cita omitida]. ...".

[25] N. Frattallone, La Vista Preliminar, 63 Rev. Der. Puertorriqueño 231, 234 (1977).

Aponte, ante, a la pág. 664; Martínez Cortés v. Tribunal Superior, 98 D.P.R. 652, 657 (1970).

Si el juez instructor determina, luego de analizar y evaluar toda la evidencia testifical y documental desfilada en la vista, que no hay causa probable de que se haya cometido el delito o de que el imputado lo haya cometido, deberá exonerarlo y dejarlo en libertad. Pueblo v. Rodríguez Aponte, ante, a la pág. 667. Por el contrario, si el magistrado concluye que existe causa probable para radicar una acusación, tal determinación gozará de una presunción legal de corrección. Pueblo v. Andaluz Méndez, ante; Pueblo v. Rivera Rivera, ante, a la pág. 872; Pueblo v. González Pagán, 120 D.P.R. 684, 687 (1988); Pueblo v. Rodríguez Aponte, ante, a la pág. 664; Pueblo v. Tribunal Superior, 104 D.P.R. 454, 459 (1975); Rabell Martínez v. Tribunal Superior, 101 D.P.R. 796, 789-790 (1973).

Las características esenciales de la vista preliminar han sido resumidas, por nuestra doctrina jurisprudencial, de la siguiente manera:

> "...(1) el objeto central de la vista preliminar no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado; (2) aunque se trata de una función propiamente judicial no es 'un mini juicio'; (3) el fiscal no tiene que presentar toda la prueba que posea; (4) la vista está encaminada a proteger al imputado a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario, y (5) una vez se demuestra y justifica esta intervención, la vista ha

cumplido su propósito de ley... ." Pueblo v. Rivera Rivera, ante, a la pág. 873; Pueblo v. González Pagán, ante, a la pág. 688; Pueblo v. Rodríguez Aponte, ante, a la pág. 665.

Por último, es preciso recordar la normativa que, de manera mayoritaria, este Tribunal estableciera hace aproximadamente dos años, en cuanto a la vista preliminar, en Pueblo v. Andaluz Méndez, ante --norma jurisprudencial que resulta obligatoria en esta jurisdicción-- a los efectos de que:

> "el magistrado que preside la vista[preliminar] puede decidir no escuchar prueba de la defensa una vez se convenza de la existencia de causa probable. Esa discreción no es absoluta ni está acorde con el espíritu y letra de la Regla que específicamente reconoce al imputado la facultad de presentar prueba a su favor. El magistrado no puede descartar escuchar cualquier prueba que quiera aportar la defensa. Teniendo en mente que la vista preliminar no es un minijuicio, cuando se haga un ofrecimiento de prueba que por su naturaleza demuestra en forma incontrovertida que el imputado no cometió el delito imputado o que cometió un delito menor o se violaron garantías a privilegios constitucionales que justifican su exoneración en esa etapa, el magistrado viene obligado a escuchar la prueba así ofrecida, siempre y cuando la misma permita disponer del caso en ese momento y no requiera resolver cuestiones de credibilidad que correspondan a la etapa del juicio. (Citas omitidas y énfasis suplido).

Todas estas expresiones, en torno a la vista preliminar, son aplicables a la vista de determinación de causa probable regulada por la Regla 2.10 de Procedimiento para Asuntos de Menores. Pueblo en interés

de los menores A.L.R.G. y F.R.G., ante; Pueblo en interés del menor F.R.F., ante.

IV

Consustancial al derecho que tiene todo acusado a no ser privado de su libertad sin el debido procedimiento de ley, la Regla 23 de Procedimiento Criminal[26] preceptúa que, durante la vista preliminar, un acusado tiene "derecho a ofrecer prueba a su favor" tendente a derrotar la probabilidad de que se cometió el delito imputado y de que él fue el autor del mismo.[27] Pueblo v. Vélez Pumarejo, ante, a la pág. 354.

En Hernández Ortega v. Tribunal Superior, ante, surgió la interrogante de si la defensa afirmativa de locura del imputado al momento de realizar los alegados hechos delictivos podía plantearse durante la vista preliminar. Al analizar la controversia apuntada, explicamos que la frase "ofrecer prueba a su favor" contenida en la citada Regla 23 "...deriva básicamente de la Regla 5 (c) de las Reglas Federales de Procedimiento Criminal, aunque la totalidad de nuestra Regla 23

---

[26] 34 L.P.R.A. Ap. II, R. 23.

[27] La Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23, dispone, en la parte que nos interesa, como sigue:

"(c) Procedimiento durante la vista. Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La persona podrá contrainterrogar los testigos en su contra y ofrecer prueba a su favor... ." (Enfasis suplido).

entronca también con disposiciones de nuestro Código de Enjuiciamiento Criminal de 1935, del de California y del Código Modelo. ...". Hernández Ortega v. Tribunal Superior, ante, a la pág. 767.

Por esta razón, decidimos recurrir tanto a la jurisdicción federal como a la de California para examinar cómo estas jurisdicciones habían resuelto la controversia planteada. Como resultado, encontramos que en la esfera federal "[v]arios comentaristas estiman que la defensa afirmativa de locura no es dilucidable en la vista preliminar. Así lo considera Moore, por ejemplo, quien opina que la defensa afirmativa de coartada puede interponerse en la vista preliminar, pero no la de locura" (cita omitida y énfasis suplido). Hernández Ortega v. Tribunal Superior, ante, a la pág. 767. Por otro lado en California, "...estado de donde provino directamente nuestro Código de Enjuiciamiento Criminal, se resolvió que las defensas afirmativas, sin distinguir entre ellas, ..., son planteables en la vista preliminar". Ibid.

Al decidir que la defensa de locura podía interponerse en la vista preliminar, este Tribunal adoptó, en Hernández Ortega, ante, la visión más amplia de esta vista y reiteró que el propósito evidente de la misma era evitar que se sometiera a una persona, arbitraria e injustificadamente, a los rigores de un juicio criminal. Aclaramos, no obstante, que esta

decisión no convertía a la vista preliminar en un mini-juicio y que quedaba incólume el principio de que el juez sólo tiene que determinar, en esta etapa de los procedimientos, la existencia o no de causa probable. De igual forma, expresamos que el magistrado no tiene que adjudicar finalmente si la defensa afirmativa prosperará o no eventualmente, fuera de toda duda razonable, en el juicio. Su labor se limita a "aquilatar la razonabilidad de exponer a una persona a quien se le imputa un delito a los rigores de un juicio criminal". Hernández Ortega v. Tribunal Superior, ante, a la pág. 769.

Posteriormente, en Pueblo v. Lebrón Lebrón, 116 D.P.R. 855, 860 (1986)[28], concretamos que la norma establecida en Hernández Ortega v. Tribunal Superior, ante, no fue creada para hacer de la vista preliminar un juicio separado para litigar la capacidad mental de un imputado; más bien, surgió para ofrecerle una oportunidad de que en una etapa inicial del proceso el imputado establezca, por medio de evidencia clara y convincente, que no debe ser enjuiciado por ser inimputable al momento de los hechos. Además, señalamos, en cuanto a la defensa de locura, que cuando la prueba de la incapacidad no sea

---

[28] En este caso se resolvió que "...si bien la defensa afirmativa de locura puede plantearse en la vista preliminar [cita omitida] ello no impide al Ministerio Público acudir a vista preliminar en alzada para una nueva determinación sobre la inimputabilidad del acusado". Pueblo v. Lebrón Lebrón, ante, a la pág. 856. Esta norma fue ratificada en Pueblo v. Lebrón Lebrón, 121 D.P.R. 154, 160 (1988).

tan clara, o cuando converjan testimonios periciales contradictorios, el juez no tiene que adjudicar los méritos de la defensa para que el asunto se aclare en el juicio, Pueblo v. Lebrón Lebrón, 116 D.P.R. 855, 860 (1986); sin embargo, debe permitir que se presente.

Ahora bien, ¿cuál es el alcance del derecho de todo acusado "...a ofrecer prueba a su favor"? ¿Se limita, meramente, a la presentación de la defensa de incapacidad mental? O, por el contrario, ¿se extiende para permitir otra prueba como, por ejemplo, la defensa de coartada? La doctrina jurisprudencial anteriormente expuesta no logra contestar directamente estas interrogantes que resultan ser medulares para la debida resolución del caso de marras.[29]

---

[29] Reconocemos, como bien nos señala la representación legal del menor peticionario, que en la práctica algunas salas del Tribunal de Primera Instancia han permitido la presentación de prueba sobre la defensa de coartada durante la vista preliminar, aplicando por analogía nuestros pronunciamientos en Hernández Ortega, ante. Esa parece ser la interpretación de la Profesora Nevares-Muñiz al expresar que el derecho de los acusados a presentar prueba a su favor "incluye las defensas afirmativas, siempre que se le provea al fiscal los beneficios de la Regla 74 (notificación de defensas de coartada e incapacidad mental)". D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 3era ed., Hato Rey, Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., 1992, pág. 87.

Por su parte, la Profesora Resumill de Sanfilippo, luego de señalar que "el alcance y extensión del derecho del imputado a ofrecer prueba a su favor no ha sido interpretado con claridad", sugiere que bajo el razonamiento de este Tribunal en Pueblo v. Lebrón Lebrón, ante, "serían promovibles y suceptibles de ser resueltas en esta etapa del proceso aquellas defensas afirmativas que no requieran de ser dilucidadas con mayor amplitud en

Para poder resolver si un menor puede presentar evidencia sobre la defensa de coartada en la vista para la determinación de causa probable para la radicación de una querella, debemos primero establecer si un adulto puede, como parte de su derecho a presentar prueba a su favor, plantear la defensa de coartada durante la vista preliminar. Ello por la sencilla razón de que si al adulto le asiste ese derecho, no existe motivo alguno para negárselo al menor de edad. En consecuencia, y siguiendo la metodología de análisis que este Tribunal utilizó en Hernández Ortega, ante, para abordar la controversia allí resuelta, veamos cuál ha sido la respuesta a estas interrogantes en la jurisdicción federal, lugar de procedencia de nuestra Regla 23 de Procedimiento Criminal.[30]

Bajo las disposiciones de las Reglas de Procedimiento Criminal federal[31], se ha resuelto que el

_____

el juicio y que no sean de carácter controvertible". O.E. Resumill de Sanfilippo, Derecho Procesal Penal, Orford, New Hampshire, Equity Publishing Company, 1990, t. 1, págs. 381 y 383.

[30] Sobre la necesidad y conveniencia de recurrir al estudio comparado del Derecho en la búsqueda de soluciones más justas y certeras de los recursos ante nuestra consideración, véase: Valle v. American International Insurance Co., 108 D.P.R. 692, 687 (1979); J.A.D.M. et al. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993).

[31] La Regla 5 de las Reglas de Procedimiento Criminal federal, Fed. R. Crim. P. 5, regulaba, además de los detalles sobre la vista preliminar, todo lo concerniente a la comparecencia inicial de un imputado ante un magistrado. En 1972, el Congreso de los Estados Unidos decidió enmendar la Regla 5 para eliminar de la misma toda referencia a la vista preliminar. En consecuencia, incorporó a las Reglas de Procedimiento Criminal federal

objetivo de la vista preliminar es establecer si existe causa probable para continuar con un procedimiento criminal en contra del acusado. United States v. King, 482 F. 2d 768, 774-775 (D.C. Cir. 1973); Coleman v. Burnett, 477 F. 2d 1197, 1204 (D.C. Cir. 1973). De conformidad, se reconoce el derecho de todo acusado a contrainterrogar a los testigos de cargo, a solicitar la citación de testigos y a presentar prueba a su favor. United States v. King, ante, a la pág. 775; Coleman v. Burnett, ibid; Ross v. Sirica, 380 F. 2d 557, 559 (D.C. Cir. 1967); U.S. ex rel. Wheeler v. Flood, 269 F. Supp. 194, 197 (E.D. N.Y. 1967); Washington v. Clemmer, 339 F. 2d 715, 718 (D.C. Cir. 1964). Así también se ha expresado que la vista preliminar no se creó solamente para que el

---

la Regla 5.1, la cual rige, desde ese entonces, la vista preliminar en el ámbito federal. Con respecto a la controversia ante nos —el derecho del acusado a presentar prueba a su favor— la nueva Regla 5.1 mantuvo el mismo lenguaje que la Regla anterior. 24 J. Moore, Moore's Federal Practice, sec. 605 App.100 (3d ed. 1997).

La Regla 5.1 de las de Procedimiento Criminal federal dispone, en su parte pertinente, que :

> "If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the federal magistrate judge shall forthwith hold the defendant to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine adverse witnesses and may introduce evidence. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 12." (Enfasis suplido) Fed. R. Crim. P. 5.1.

ministerio público cumpliera con su obligación de presentar prueba dirigida a establecer causa probable, sino que también fue concebida para ofrecerle una oportunidad al acusado para refutar la evidencia del Estado. Además se ha dicho que, así como la fiscalía tiene que intentar maximizar las probabilidades de que se concluya que existe causa probable, el acusado puede hacer todo lo posible para minimizar tales probabilidades y el tribunal debe permitírselo a ambas partes. Coleman v. Burnett, ante, a la pág. 1204.

Al distinguir la vista preliminar para determinar causa probable para enjuiciar a un acusado de la vista para determinar causa probable para arresto, la Corte de Circuito de Apelaciones del Distrito de Colombia ha expresado que:

> "...[The] difference [between these two hearings] is the presence of the accused at the preliminary hearing and his right to cross-examine prosecution witnesses and introduce evidence in his own behalf. ... The traditional function of the preliminary hearing is a second determination on probable cause, this time after according the accused a reasonable opportunity to rebut it. Unless the accused is indulged in that respect, the preliminary hearing is little more than a duplication of the probable cause decisions that foreran his arrest." Coleman v. Burnett, ante, a la pág. 1204.

Para poder hacer una determinación de causa probable, el juez debe tomar en consideración "toda la evidencia" presentada en la vista preliminar, lo que necesariamente incluye aquella prueba aducida por el

acusado, ya sea durante el contrainterrogatorio de los testigos de cargo o mediante la presentación de evidencia a su favor. United States v. King, ante, a la pág. 774; Coleman v. Burnett, ante, a la pág. 1204; Ross v. Sirica, ante, a la pág. 559. En Coleman v. Burnett, ibid, el tribunal expresó que "...[t]he magistrate must 'listen to... [the] versions [of all witnesses] and observe their demeanor and provide an opportunity to defense counsel to explore their account on cross-examination.'...".

Según la doctrina federal, negar a un acusado su derecho a presentar testigos cuyo testimonio sea material a la determinación de inexistencia de causa probable, en una etapa tan crítica de los procedimientos criminales como lo es la vista preliminar[32], no sólo contraviene la regla federal, sino que también constituye una privación que alcanza magnitudes constitucionales por infringir la garantía que tiene todo acusado, consagrada en la Sexta Enmienda de la Constitución federal, de tener una adecuada representación legal. Véase: United States v. King, ante, a la pág. 775; Coleman v. Burnett, ante, a la pág. 1205, citando a Coleman v. Alabama, 399 U.S. 1, 7-10 (1970). En la jurisdicción federal se considera tan perjudicial para un acusado el que no se le permita presentar testigos a su favor, que se ha reconocido el derecho a solicitar una orden para que se celebre una

---

[32] Coleman v. United States, 399 U.S. 1, 9 (1970); Rivera Escuté v. Delgado, 439 F. 2d 891, 893 (1st Cir. 1971); 404 U.S. 824 (cert. den. 1971).

nueva vista donde pueda presentar su evidencia. Blue v. United States, 342 F. 2d 894, 900 (D.C. Cir. 1964); 380 U.S. 944 (cert. den. 1965).

No obstante, el derecho a presentar prueba a su favor en la esfera federal no es irrestricto y puede ser limitado de no establecerse la materialidad de la evidencia favorable. Del mismo modo, se ha restringido el derecho de un acusado a producir prueba cuando el testigo que se intenta presentar no puede declarar por razones físicas o psicológicas. Ahora bien, si el acusado asevera hechos que, de ser ciertos, serían pertinentes a cualquier controversia en el caso, debe permitírsele que presente la prueba a su favor. Por otro lado, si de la oferta de prueba se desprende que de su faz el testimonio es inherentemente increíble, la solicitud para presentar esa prueba debe ser denegada. United States v. King, ante, a la pág. 775; Coleman v. Burnett, ante, a la pág. 1205; Washington v. Clemmer, ante, a la pág. 718.

En cuanto a la defensa de coartada, en Washington v. Clemmer, ante, a la pág. 718, el tribunal expresó que el testimonio de un testigo presentado por el acusado para establecer la defensa de coartada es admisible durante la vista preliminar por considerarse material a la determinación de causa probable. United States v. King, ante, a la pág. 774; Coleman v. Burnett, ante, a la pág. 1205. Esta misma dirección la sigue Moore al destacar

que la defensa de coartada puede interponerse en la vista preliminar, pero no la de locura.[33]

Expuesta la normativa federal, regresamos al ámbito de nuestra jurisdicción. Así, sobre la defensa de coartada, este Tribunal ha expresado que la misma "consiste esencialmente en la alegación del hecho de que el acusado no se encontraba en el lugar del crimen que se le imputa en la fecha y hora en que se supone se cometió". Pueblo v. Rosario Reyes, res. el 7 de junio de 1995 ___ D.P.R. ___ (1995); Pueblo v. Millán Meléndez, 110 D.P.R. 171, 183 (1980); Pueblo v. Tribunal Superior, 101 D.P.R. 133, 138 (1973). Por ello, somos del criterio que la evidencia tendente a establecer la defensa de coartada es material para la determinación de causa probable durante la vista preliminar, ya que puede negar o eliminar totalmente la posibilidad de que el imputado del crimen haya sido su autor. Por lo tanto, entendemos que un acusado puede presentar la defensa de coartada en la vista preliminar y que el juez instructor la deberá tomar en consideración en su determinación de si existe o no causa probable para acusar al imputado. Al igual que como sucede con la defensa de locura, el magistrado no tendrá que adjudicar si la defensa prosperará o no eventualmente en el juicio; sólo debe aquilatar la razonabilidad de exponer al imputado a los rigores de un

---

[33] 8 J. Moore, Moore's Federal Practice, sec. 5.1.02 (2d ed. 1985); citado por este Tribunal en Hernández Ortega v. Tribunal Superior, ante, a la pág. 767.

juicio frente a la evidencia producida por el Ministerio Público para cumplir con su carga de la prueba en esta etapa de los procedimientos.

Ahora bien, y acorde con lo resuelto por este Tribunal en Pueblo v. Andaluz Méndez, ante, la defensa de coartada a ser presentada en la vista preliminar, reglamentada la misma por la Regla 23 de las de Procedimiento Criminal, será aquella que, mediante evidencia clara y convincente, establezca que el testimonio prestado por los testigos de cargo, que señalan al imputado como autor de los hechos, es uno increíble, no plausible o improbable. Unicamente en esta clase de situaciones será que el magistrado podrá considerar la credibilidad de los testigos como base para determinar que no existe causa probable para acusar, debiendo determinar causa probable en ausencia de tal evidencia clara y convincente.

De este modo, con esta solución, se logran los objetivos de la vista preliminar; la misma fomenta el que no se someta a una persona a un proceso criminal formal a base de una imputación falsa e infundada y evita que casos frívolos e inmeritorios recarguen el calendario de nuestros tribunales con la consiguiente erogación innecesaria de fondos públicos. De resolverse lo contrario, estaríamos, además de convirtiendo a la vista preliminar en un mero formalismo, violando las disposiciones de la propia Regla 23 de Procedimiento

Criminal[34] e infringiendo el debido proceso de ley que cobija a los acusados así como el derecho a confrontación y a una efectiva y adecuada asistencia de abogado, garantizados por la Sección 11 del Artículo II de nuestra Constitución.

Entendemos que se impone igual solución o determinación en los procedimientos de menores; ello por imperativo de la propia Ley de Menores de 1986 y su Reglamento que requieren que sus disposiciones sean interpretadas de modo que se garantice a todo menor un trato justo, el debido procedimiento de ley y el reconocimiento de sus derechos constitucionales. La naturaleza cada vez más adversativa y punitiva de los procedimientos de menores exige que se extienda a éstos la norma establecida hoy por este Tribunal para la vista preliminar en casos de adultos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[34] 34 L.P.R.A. Ap. II, R. 23.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Pueblo de Puerto Rico en**
**Interés del Menor G.R.S.**

                              CE-94-806        Certiorari
                              CE-94-807
                              Cons.

**SENTENCIA**

San Juan, Puerto Rico, a 6 de julio de 1999

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el antiguo Tribunal Superior, Sala de San Juan, devolviéndose el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García inhibido.

                              Isabel Llompart Zeno
                               Secretaria del Tribunal Supremo